**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CYNTHIA K. PAYNE, ) | Cause No. 1:01cv111 |
| Plaintiff, ) | |
| ) | Judge Herman J. Weber |
| vs. ) | |
| GLAXOSMITHKLINE, ) | |
| Defendant. ) | |
| ) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL ATTORNEYS' FEES** |

Introduction

GSK in its Memorandum for Partial Attorneys' Fees ("PAF") is now asking recovery of "partial attorneys' fees" for having to respond to Plaintiff's "frivolity." *Inter alia* it is seeking recovery for it's St. Louis counsel Gay Gallagher's time drafting a "Memorandum in Support of Motion for Summary Judgment" on October 30, 2001, *a month and a half before any documents were produced by GSK.*[1] Interestingly, since we have shown elsewhere that incomplete list of documents and incomplete documents themselves, were supplied by Gallagher's office December 18, and 28, 2001, respectively,

---

[1] For the full chronology of discovery through year-end 2001, see Exhibit "A" attached to Doc. No. 34, filed June 27, 2002. To complete the record we also file as Exhibit "A" herein the Gaynell Gallagher letter to the undersigned dated November 29, 2001, referred to in the earlier Doc. No. 34 Exhibit "A."

these time sheet show that GSK's counsel was drafting summary judgment materials *before herself knowing what documents were in her own case.*

### "With Reasonable Inquiry"

GSK argues that Plaintiff's claims of "contract, disability, fraud, and outrage" were/are "frivolous, unreasonable or without foundation." (GSK PAF Memorandum at 5, lns. 2-3):

> Plaintiff and her counsel should have known, *with reasonable inquiry,* that her contract, disability, fraud, and outrage claims were wholly devoid of merit under the law. (*Id.* at lns. 3-5; emphasis added)

Reading further in GSK's PAF Memorandum, we see that it's theory is *if the plaintiff's own version of the facts*, coupled with a basic examination of the law, reveals that plaintiff's claims are unsupportable, the case must be frivolous. (*Id.* at lns. 14-16)

GSK is estopped by its own conduct from making the above "reasonable inquiry" (or lack thereof) argument.

The record will show that initially (before Notice to Sue Letter from EEOC) we filed the case narrowly. (Complaint: Doc. No. 1; Breach of Contract, Negligence) But, as we have detailed in earlier filings, e.g. Plaintiff's Memorandum in Support of Award of Attorney Fees, Doc. No. 110, GSK failed to produce the documents of this case under Rule 26(a)(1) and otherwise thwarted any "reasonable inquiry."

### Breach of Contract

GSK's argument/presentation – *its entire argument* -- that our breach of contract claim was "frivolous" is contained in one short sentence:

> Plaintiff never had a contract with GSK, so GSK could not have breached a contract. (GSK PAF Memorandum at 5, lns. 16-17)

2

Such bare argument implies, we assume, that when one is dismissed on a count in summary judgment the winning party is *ipso facto* entitled to its attorney fees.

This court found (Order, Doc. No. 60; January 27, 2003) that there was no contract claim. The court did not even hint that the claim was frivolous. We relied on the *Angotti* case, *Angotti, v. State Farm*, 1991 U.S. App. LEXIS 28187 (6th Cir. 1991), factually on all fours and which found a contract in an insurance training situation in the teeth of a signed document stating that the employment was at will only. The only meaning of the one-page agreement promising to score 85%, (Testing Requirements – Regular Force Sheet Signed by Cynthia Payne Dated 3/31/00; Jt. Exh. IV), the court will remember was focused on by *both* sides at trial, is that GSK had a duty to "know" its own testing materials and to administer the test fairly. Otherwise Plaintiff's employment with GSK was merely a lottery ticket on a job.

<u>Disability</u>

We had a disability case when we amended our complaint after our EEOC Notice to Sue letter in the spring of 2001, but we did not after the *subsequent* decision of the U.S. Supreme Court in *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 122 S.Ct 681 (2002). GSK's implicit argument here is that if one does not immediately dismiss a count the day the case law changes he owes attorney fees to the opponent.

Plaintiff asked for an accommodation – retaking the test -- for slow learning due to chemotherapy after breast cancer, during the termination interview, and was denied. GSK points out that the record in the case shows that the company had terminated Plaintiff before the latter had informed it of the disability. But if this disability cause of action had remained in the case we would have proved that the papers signed August 2, 2000, were

not final until executed by the home office in Philadelphia and therefore GSK knew of the disability "prior to" final termination and should have accommodated her by giving her the test again under fair conditions.

GSK must know its claim for partial attorney fees is frivolous. Indeed, attached hereto as Exhibit "B" is a fax sent by the undersigned to Gay Gallagher October 23, 2001, enclosing the case of *McKinney v. New Process Geardivision of New Venture Gear, Inc*, 2000 U.S. Dist. LEXIS 9787, discussing this concept of disclosure during or after termination.

### Fraud

Also attached hereto as Exhibit "C" is the deposition testimony of Plaintiff on the issue of fraud. At this time we had not taken the depositions at the home office which showed that the promises made to Plaintiff upon hiring her were arguably fraudulent, although the undersigned suspected that "something was up" when Sheldon Thomas was "guided" through his deposition by Gay Gallagher October 4, 2001.

For fraud we relied on Ohio law and also *Hyman v International Business Machines Corporation*, 2000 U.S. Dist. LEXIS 15136, (U.S.D.C.S.D.N.Y. 2000) where individuals claimed that they were fraudulently induced to leave their jobs at International Business Machines Corp. ("IBM") and join its subsidiary, Employment Solutions Corp., by false factual representations of the existence of a specific five-year contract *between the two companies*. Based on those allegations the court denied IBM's motion to dismiss. (Plaintiff's Memorandum in Opposition to GSK's Motion for Summary Judgment; Doc. No. 27 at 17; filed June 18, 2002.)

Prior to summary judgment we staked our position on fraud with the following proposition: the false representation of GSK (known to be false when Plaintiff was offered the job in March 2000) was that there was a valid training program in place and valid testing would result with real people having knowledge of training materials, evaluating Plaintiff, whereby the 85% rule would determine as a threshold who would succeed and who would not (barring reductions in force and the like). (*Id.*)

Although Plaintiff did not mention this in her deposition early on, it was because of the utterly unlikely testimony of Sheldon Thomas October 4, 2001, it appeared to the undersigned that that fraud in the inducement was a likely theory. His answers – bolstered, discussed *infra.*, by Gay Gallagher's clearly-improper "talking objections" tipping him off -- were patently odd – denying knowledge at that late date that *any* new materials had been sent to the sales reps the week of July 27th 2000 -- that a broader cover-up appeared likely, and we thus amended our complaint to add fraud.  The continued evasive actions of GSK in discovery plus the total lack of knowledge at the home office (despite their "boning-up" for trial in July of 2003) reinforced our belief that GSK was fraudulent from the outset in presenting the homestudy course.

In our Memorandum in Opposition [to Summary Judgment], *supra.* at 4-7, we spelled out many indicia of fraud. For example Massaro testified in deposition that when he took his short-lived job of "Avandia Trainer" in April 2000 he was unaware of the existence of the prior Avandia Homestudy Workbook and did not become so aware until early 2002 in answering interrogatory requests.  Since by trial time Masarro was "the expert" on Avandia (Tench testimony at trial) and he testified at trial that the design of the training materials was done by a third-party vendor, the company therefore knew when it

5

hired Plaintiff in March 2000 that no one was in any position to analyze the meaning of the questions and the effect that the wrong workbook would have on the sales reps. All they could do was analyze the "most-missed" questions and give relief if they involved "sales aid" materials that had changed.

  We early on researched the issue of misconduct by a party in discovery as a separate indicia of fraud and could find only cases in the patent law area. See *Tanashin Denki Co., Ltd., v. Thomson Multimedia,Inc.*, 2002 U.S. Dist. LEXIS 14598 (S.D. Ind. 2002). In patent law discovery delay demonstrably benefits the infringer since he reaps profits during the delay. In the present case the same inference is not so strong. There may be many reasons for the hiding of documents (hiding internally by GSK as well as GSK hiding from the undersigned opposing counsel) and the failure to make narrative internal memos implies broad "hiding." One human explanation is merely to keep knowledge from one's superior to keep one's job, which does not necessarily mean fraud against Plaintiff in the first instance, etc.

Outrage

  We believed from the outset that the circumstances of humiliation and firing, focusing on the plea for help due to disability conditions, constituted outrage. The court limited us to the Title VII cause of action and at trial we didn't even hint at this disability concern so as not to prejudice the jury by such inflammable and unrelated testimony. In its summary judgment order of January 27, 2002, and in chambers, this court hinted at possible frivolity on our part regarding outrage, but not to the point of sanctions.

<u>Basic Inquiry with One's Own Client</u>

GSK, as noted *infra.*, argues if the Plaintiff's own version of the facts, coupled with a basic examination of the law, reveals that Plaintiff's claims are unsupportable, the case must be frivolous. (GSK PAF Memorandum at 5, lns. 14-16)  We, of course, disagree.  As it has done throughout the case (see discussion in our Memorandum in Support of Award of Attorney Fees, Doc. No. 110, filed August 25, 2003), GSK, *while withholding its own documents*, merely holds a "mirror" up to facts as "seen" by Plaintiff. GSK trots out Plaintiff's deposition taken in January and February 2002, when *some* GSK materials (what Plaintiff herself had returned) had been sent to us but clearly before all of the GSK materials had been sent/found.  To "freeze" the Plaintiff's case and declare it frivolous as of this moment in time, as GSK does, makes no sense.

<u>Conclusion</u>

For the foregoing reasons and for good cause this court should deny GSK's Motion for Partial Attorneys' Fees.

                                    Respectfully submitted,

                                    /s/ F. Bruce Abel
                                    _____
                                    F. Bruce Abel  (0021883)
                                    Trial Attorney for Plaintiff
                                    885 Greenville Avenue
                                    Cincinnati, OH 45246
                                    513 772 1045
                                    513 772 7991 fax
                                    email: babel2@fuse.net

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark J. Stepaniak
Taft, Stettinius & Hollister
1800 Firstar Tower
425 Walnut Street
Cincinnati, Ohio 45202-3957
Ph: (513) 381 2838
email: stepaniak@taftlaw.com

Joseph E. Guffey
Husch & Eppenberger
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
Ph: (314) 480 1500
email: joe.guffey@husch.com

Counsel for Defendant


/s/ F. Bruce Abel
_____
F. Bruce Abel
Attorney for Plaintiff
885 Greenville Avenue
Cincinnati OH  45246